**RIMAC & MARTIN**
A Professional Corporation
JOSEPH M. RIMAC (SBN 72381)
WILLIAM REILLY (SBN 177550)
KEVIN G. GILL (SBN 226819)
1051 Divisadero Street
San Francisco, CA 94115
Telephone: (415) 561-8440
Facsimile: (415) 561-8430
*josephrimac@rimacmartin.com*
*w_reilly@rimacmartin.com*
*kgill@rimacmartin.com*

Attorneys for Defendant
MULTINATIONAL UNDERWRITERS, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STANFORD HOSPITAL AND CLINICS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MULTINATIONAL UNDERWRITERS, INC. ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> _____ ) | ***E-FILING*** <br><br> **CASE NO. C 07-05497 JF** <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. Rule 12(b)(6)** <br><br> Date: January 18, 2008 <br> Time: 9:00 am <br> Dept: Courtroom 3 <br> The Hon. Jeremy Fogel |

# TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT IN REPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    PLAINTIFF FAILED TO SATISFY THE STATUTE OF FRAUDS. . . . . . . . . . 2

        1.    *Cedars-Sinai* is Inapplicable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.    Acknowledgment of a Debt Creating an Obligation to Pay Must be Unequivocal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    FAILURE TO PLEAD ALL ELEMENTS OF A BREACH OF ORAL CONTRACT CAUSE OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    Plaintiff Does Not Allege Mutual Consent. . . . . . . . . . . . . . . . . . . . . . . 6

        2.    Plaintiff Does Not Allege Valid Consideration. . . . . . . . . . . . . . . . . . . . 7

            a.    *Plaintiff's Change of Legal Position Theory is Not Supported.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            b.    *Plaintiff's Attempt to Allege Fulfillment of MNU's Duty to Patient is Likewise Not Supported.* . . . . . . . . . . . . . . . . . 8

    C.    PLAINTIFF FAILED TO PLEAD THE NEGLIGENT MISREPRESENTATION CAUSE OF ACTION WITH PARTICULARITY, OR TO PLEAD A POSITIVE ASSERTION THAT WAS INTENDED TO MISLEAD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Plaintiff Fails to Meet Heightened Pleading Requirements. . . . . . . . . . 10

        2.    Plaintiff Fails to Plead a Positive Assertion.. . . . . . . . . . . . . . . . . . . . . 11

    D.    PLAINTIFF FAILED TO PROPERLY PLEAD COMMON COUNTS. . . . . . . 11

    E.    FAILURE TO ESCAPE THE STATUTE OF LIMITATIONS.. . . . . . . . . . . . . 12

        1.    Plaintiff failed to plead around the statute of limitations. . . . . . . . . . . 13

        2.    Extrinsic Evidence relating to a Statute of Limitations Defense May Be Considered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1 | **TABLE OF AUTHORITIES**

2 | **Cases**

3 | *ALA, Inc. v. CCAIR, Inc.*,
4 |     29 F.3d 855 (3d. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 | *B.L.M. v. Sabo & Deitsch*,
6 |     55 Cal.App.4th 823 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7 | *Bell v. Morrison*,
8 |     26 U.S. 351 (1829). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9 | *Branch v. Tunnell*,
10 |     14 F.3d 449 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 | *Bryant v. Avado Brands, Inc.*,
12 |     187 F.3d 1271 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13 | *Cedars-Sinai Medical Center v. National League of Postmasters*,
14 |     497 F.3d 972 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

15 | *Data Disc, Inc. v. Systems Technology Associates, Inc.*,
16 |     557 F.2d 1280 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

17 | *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.*,
18 |     208 Cal.App.3d 1297 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

19 | *Global Network Communications, Inc. v. City of New York*,
20 |     458 F.3d 150 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21 | *Huber, Hunt & Nichols, Inc. v. Moore*,
22 |     67 Cal.App.3d 278 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23 | *Jablon v. Dean Witter & Co.*,
24 |     614 F.2d 677 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

25 | *Jara v. Suprema Meats*,
26 |     121 Cal.App.4th 1238 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27 | *Keeler v. Murphy*,
28 |     117 Cal.App. 386 (1931). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Khajavi v. Feather River Anesthesia Medical Group*,
   84 Cal.App.4th 32 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Miller v. Allstate Ins. Co.*,
   489 F.Supp.2d 1133 (SD Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc.*,
   998 F.2d 1192 (3rd Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Quackenbush v. Omnicor, Inc.*,
   34 Cal.App.4th 1283 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
   77 F.3d 309 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sherwood v. Lowell*,
   34 Cal.App. 365 (1917). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sterling v. Taylor*,
   40 Cal.4th 757 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Xechem, Inc. v. Bristol–Myers Squibb Co.*,
   372 F.3d 899 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Rules, Codes and Statutes**

California Civil Code § 1550. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Civil Code § 1565. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Civil Code § 1572. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code § 1580. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Civil Code § 1605. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Civil Code § 2794. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

California Code of Civil Procedure § 339. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1    Federal Rules of Civil Procedure, Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2    Federal Rules of Civil Procedure, Rule 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

3    **Treatises and Secondary Sources**

4    Schwarzer, Tashima & Wagstaffe,

5        *California Practice Guide: Federal Civil Procedure Before Trial* (Rutter 2007).. . . 13, 14

## I. INTRODUCTION

Defendant Multinational Underwriters, LLC ("MNU") requests that the Court grant its motion to dismiss the complaint under FRCP 12(b)(6) because the opposition filed by plaintiff Stanford Hospital and Clinics ("Plaintiff") demonstrates that Plaintiff has failed to satisfy California's statute of frauds, failed to bring its action before the expiration of the statute of limitations, and failed to allege a valid oral contract, misrepresentation, or any other basis for the finding of a duty on behalf of MNU to pay for uncovered, medically necessary services rendered to a third party (the "patient") without any promise to pay or positive assurance of any kind on MNU's part. Additionally, the opposition shows Plaintiff is deliberately omitting reference to documents and facts that, if stated, would render the complaint unsalvageable.

It is axiomatic that, for the formation of a contract to occur, all parties involved must come to a meeting of the minds. A contract cannot be formed by trickery or conjecture about silent implications. But that is precisely what Plaintiff is trying to do. Plaintiff is trying to turn a call it made seeking authorization for services, where the authorization was not given, into a contract wherein MNU is purported to have agreed to pay whatever charges Plaintiff ultimately decided to bill. There is no alleged bargained-for exchange, or any of the other elements of a valid contract. The law does not allow one party to snatch a contract out of the implications it reads into the communications of an unsuspecting party.

When faced with the clear language of California's Statute of Frauds, Plaintiff seeks to avoid the Statute by suggesting the "oral contract" was not an agreement to pay the debts of another, but just some random, independent agreement to pay for something that, while it would benefit both Plaintiff and the patient, did not benefit MNU and for which MNU would otherwise have no obligation to pay. And Plaintiff seeks to avoid the Statute of Limitations by playing coy as to when MNU informed Plaintiff its claim was denied.

There is no allegation that the foreign travel insurance policy between MNU and the patient provided coverage for the services rendered (it does not), and there is no allegation (nor can there be) that Plaintiff is somehow a beneficiary of the inapplicable insurance policy. This is NOT an action on an insurance policy. There is no allegation that Plaintiff's claim was covered. Plaintiff

-1-
REPLY SUPP. DEF'S.
MOTION TO DISMISS                                                                  CASE NO. C 07-05497 JF

1  seeks instead to have the Court force MNU to pay for something it never authorized or agreed to pay,
2  based on nothing more than MNU's informing Plaintiff it must submit a claim.  If every insurer is
3  going to be held liable simply for informing a party of the need to submit a claim before coverage
4  can be analyzed, then the Court would in effect be rewriting every insurance policy in existence to
5  do away with the necessity of submitting a claim or the right of any insurer to investigate and
6  determine whether coverage is available.  The result Plaintiff seeks is ludicrous.

7      Plaintiff's complaint makes Swiss Cheese look rock solid: it is not based on any valid legal
8  theory, and should not survive MNU's motion to dismiss.  To allow Plaintiff's case to go forward
9  is to waste the time and resources of the Court and the parties.

10

11                             **III.  ARGUMENT IN REPLY**

12 **A.  PLAINTIFF FAILED TO SATISFY THE STATUTE OF FRAUDS**

13     Plaintiff contends that the Statute of Frauds does not apply, because MNU allegedly "made
14 an <u>independent</u> promise to pay for patient's medical costs directly to" Plaintiff.  (Opp., at 2:14-18.)

15     The primary purpose of the statute of frauds is evidentiary, to require reliable evidence of the
16 existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts
17 never in fact made.  *Sterling v. Taylor*, 40 Cal.4th 757, 766 (2007).  Thus, Courts should not be over-
18 eager to thwart the legislative purpose in adopting a statute of frauds.  *Keeler v. Murphy*, 117
19 Cal.App. 386, 391 (1931).

20     Plaintiff does not  allege that the costs were incurred by MNU – they were not.  Nor does
21 Plaintiff allege that MNU received anything in exchange for its alleged promise – it did not.  Nor
22 does Plaintiff allege that it gave up its right to pursue the patient – it did not.  Quite the contrary, as
23 Plaintiff explained, "in other words, Stanford could sue either Patient for breach of Patient's promise
24 or defendant for breach of defendant's promise.  In this action, Stanford Hospital chose the latter
25 course . . . .")  (Opp., at 4:24-27.)  Nor does Plaintiff allege that its claim relates in any way to the
26 international travel plan, let alone that it is a beneficiary of said plan – because the plan does not
27 afford any coverage for the claims at issue.  (Complaint, ¶¶ 9, 12.)

28     The alleged implied agreement to pay for what MNU would otherwise have no obligation

to pay falls squarely within the statute of frauds, Plaintiff has not identified any of the exceptions which would render the alleged, implied promise an "original" promise and thus outside the Statute of Frauds (nor could it, as the interests involved were not so aligned), and Plaintiff's complaint is properly dismissed with prejudice for failure to satisfy the Statute of Frauds.

### 1. *Cedars-Sinai* is Inapplicable.

Plaintiff does not cite any legal authority to support its contention that the alleged promise to pay for the treatment given to the patient should not be considered a promise to pay for the debt of another, despite the fact that the alleged debt would not be one that MNU had any obligation to pay whatsoever except for the alleged, implied promise to pay. Rather than cite any legal authority even remotely related to the statute of frauds, Plaintiff cites an inapplicable Ninth Circuit case (which, despite its clear inapplicability, forms the crux of plaintiff's entire opposition). (Opp., at 4.)

In *Cedars-Sinai Medical Center v. National League of Postmasters*, the Ninth Circuit was asked to consider whether the Federal Employee Health Benefits Act ("FEHBA") preempted state-law contract remedies. 497 F.3d 972 (9th Cir. 2007). The Ninth Circuit held that the FEHBA did not preempt state law contract remedies, and thus Cedars-Sinai had not failed to exhaust FEHBA's administrative remedies. *Id.*, at 974.

The facts in *Cedars-Sinai* were as follows:

> Cedars-Sinai is a licensed hospital and non-profit California corporation. PBP Health is a professional organization that administered a federal health benefit plan ("the Plan"). The Plan was created pursuant to FEHBA, which authorizes the U.S. Office of Personnel Management ("OPM") to contract with insurance carriers to provide health benefits for federal employees. The Plan was formed by contract between OPM and PBP Health. Under the terms of the contract, PBP Health was the administrator of the Plan and was responsible for managing and paying claims for benefits owed to enrollees. Cedars-Sinai and PBP Health entered into a separate contract that governs the payment of services rendered by Cedars-Sinai to members of the Plan.
>
> On four separate occasions between October 18, 2001, and January 24, 2002, patient "S.M.," an enrollee and participant in the Plan, went to Cedars-Sinai for treatment. On all four occasions, PBP Health verified that S.M. was a Plan participant and authorized Cedars-Sinai to perform medical services. Cedars-Sinai submitted claims totaling $742,217.93, but PBP Health paid only $168,947.44. S.M. passed away on February 16, 2002.

1  *Cedars-Sinai*, 497 F.3d at 974.

2      Cedars-Sinai then brought a lawsuit against PBH Health, asserting that "PBP Health refused
3  to compensate it for the medical services, supplies, and/or equipment it provided for S.M.'s four
4  visits at the rate at which the parties contracted." *Id.* As the Ninth Circuit explained the allegations
5  further:

6      Specifically, Cedars-Sinai contends that PBP Health improperly
    claimed (1) that it was not required to pay the contracted rate for
7      federal employees because of S.M.'s death; and (2) that it need not
    pay the medicare rate because S.M. was no longer an employee.
8      Cedars-Sinai contends that the [previously formally agreed upon]
    contracted rate for federal employees is due and owing for medical
9      services that Cedars-Sinai provided to S.M.

10  *Cedars-Sinai*, 497 F.3d at 974 -975.

11      In ruling in Cedars-Sinai's favor and finding no FEHBA preemption, the Ninth Circuit
12  pointed out: (1) that there was an undisputed, formal, separate contract between Cedars-Sinai and
13  PBP Health governing the payment of services rendered by Cedars-Sinai to members of the PBP
14  Health Plan; (2) that PBP Health had confirmed that the patient was a member of the Plan and thus
15  subject to the provisions of that preexisting contract between Cedars-Sinai – PBP Health; and (3)
16  that, on all four occasions at issue there, PBP Health had authorized Cedars-Sinai to perform medical
17  services. *Id.*, at 974-75. None of those things are alleged, or even exist, here.

18      *Cedars-Sinai* did not discuss the Statute of Frauds, because there was no dispute as to the
19  existence of the Cedars-Sinai – PBP Health contract. Nor did *Cedars-Sinai* discuss the requisites
20  of pleading a breach of oral contract, again because the Cedars-Sinai – PBP Health contract was a
21  pre-existing, undisputed, formal contract. Nor does *Cedars-Sinai* discuss whether the instruction
22  to submit a claim should somehow bind an insurer, because, unlike MNU, PBP Health formally
23  authorized the medical services performed there.

24      Here, there is no allegation of a formal contract between Plaintiff and MNU. There is no
25  allegation of a written understanding of any kind. There was no allegation of any authorization to
26  proceed with services. There was no allegation that Plaintiff would have discontinued treatment
27  except for MNU's alleged implied promise. There is merely the instruction to submit a claim, which
28  was then analyzed and denied. Plaintiff infers from this an agreement to pay irrespective of the

-4-

results of the claim investigation. There is no legal precedent for such an inference. An agreement to pay for the debts or obligations of another must satisfy the Statute of Frauds. No independent consideration was given, or even alleged, and none of the specific exceptions to the Statute of Frauds apply. See Civ. Code § 2794.

### 2. Acknowledgment of a Debt Creating an Obligation to Pay Must be Unequivocal.

It has long been the case that acknowledgment of a debt sufficient to attach a corresponding duty to pay must be unequivocal:

> [A]n acknowledgment of a debt from which a promise to pay may be implied must be a direct, distinct, unqualified, and unconditional admission of a previous subsisting debt which the party is liable and willing to pay. "If there be accompanying circumstances, which repel the promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways – we think they ought not to go to the jury as evidence of a new promise to revive the cause of action."

*Sherwood v. Lowell*, 34 Cal.App. 365, 376 (1917) (*quoting Bell v. Morrison*, 26 U.S. 351, (1829)(Story, J.)).

Here, plaintiff alleges merely "tacit approval of Stanford Hospital's treatment of Patient" and suggests that alone creates an obligation to pay for said treatment. (Complaint, § 31.) The complaint does not satisfy the Statute of Frauds, and dismissal is warranted.

### B. FAILURE TO PLEAD ALL ELEMENTS OF A BREACH OF ORAL CONTRACT CAUSE OF ACTION

Plaintiff contends that it did plead the elements of breach of oral contract, in part by equating the allegation that MNU "confirmed that authorization of services provided was not required and that Stanford Hospital should submit a claim" with the actual authorization given by PBP Health in Cedars-Sinai, and thus suggesting there was consent, and in part by attempting to suggest that the treatment of patient was a benefit to MNU (even though MNU had no obligation to pay for patient's treatment at all), and thus suggesting some consideration was given. (Opp., at 5-6.) Plaintiff's allegations fall well short of the requisite elements of breach of an oral contract, and the complaint must be dismissed for this reason as well.

-5-

REPLY SUPP. DEF'S.
MOTION TO DISMISS                                                                                     CASE NO. C 07-05497 JF

1. **Plaintiff Does Not Allege Mutual Consent.**

Plaintiff does not allege an offer, acceptance, consent, or valid consideration.

Insurance, like any other contract, requires mutual consent – a "meeting of the minds." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) (citing Cal.Civ.Code §§ 1550, 1565); *Quackenbush v. Omnicor, Inc.*, 34 Cal.App.4th 1283, 1288 (1995).) There must be both an *intentional* offer and an acceptance manifesting assent to the terms of the offer in a manner invited or required thereby. *Quackenbush*, 34 Cal.App.4th at 1288. An offer made by mistake cannot be "snapped up" so as to create an enforceable contract. *Id*.

"Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code §1580; *Khajavi v. Feather River Anesthesia Medical Group*, 84 Cal.App.4th 32, 60 (2000) (quoting same).

Plaintiff contends that it did plead consent, suggesting that the allegation that MNU "confirmed that authorization of services provided was not required and that Stanford Hospital should submit a claim" (Complaint, ¶ 9), is somehow equivalent to the actual authorization given by PBP Health in Cedars-Sinai. (Opp., at 4.) The key difference being the very act of consent at issue, authorization to proceed under the terms of a pre-existing contract between the health care provider and the plan administrator in the case of *Cedars-Sinai*, versus explanation that a claim (a demand for compensation) would have to be submitted in the case at bar. There is little question that "mutual consent" was obtained in *Cedars-Sinai*, as both the pre-existing contract and the initial authorizations were undisputed, and consent was not even an issue there.

Here, the matter is quite different. The allegations of the complaint do not suggest that the parties agreed upon the same thing in the same sense, rather Plaintiff is trying to "snap up" and create a contract out of one singular telephone conversation where nothing was intentionally offered by either party, and where MNU simply confirmed that the Patient held some form of insurance through MNU and instructed Plaintiff to submit a claim. Plaintiff has failed to plead one of the essential elements of a contract – a meeting of the minds (Cal.Civ.Code § 1550(2)), and its cause of action for breach of oral contract (along with the pendant cause of action for common counts) must fail.

///

-6-

REPLY SUPP. DEF'S.
MOTION TO DISMISS                                                                                              CASE NO. C 07-05497 JF

**2.    Plaintiff Does Not Allege Valid Consideration.**

In response to the observation that Plaintiff failed to plead valid consideration, Plaintiff offers a perfunctory paragraph saying that MNU received consideration "when Stanford Hospital changed its legal position by rendering care to Patient, but also when such acts helped defendant fulfill its duty to patient under the terms of Patient's" inapplicable, international travel plan. (Opp., at 6.) Both of Plaintiff's points in opposition conflict with the very allegations of the Complaint, as well as with prior points made by Plaintiff in the Opposition, and are thus without merit. Plaintiff does not allege any change in legal position relating to the rendering of care to the Patient at all. Nor does Plaintiff allege that MNU had any obligation to pay for Patient's treatment based on the inapplicable, international travel policy.

As noted in the Motion to Dismiss, good consideration requires a bargained-for exchange. Cal. Civ. Code § 1605; *Jara v. Suprema Meats*, 121 Cal.App.4th 1238, 1248 (2004). "'A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" *Jara*, 121 Cal.App.4th at 1248 (quoting Rest.2d, Contracts, § 71).

Plaintiff does not allege an intentional offer or acceptance, and certainly does not allege any bargained-for exchange. The causes of action for breach of oral contract and common counts do not allege all of the elements necessary to indicate a valid contract existed, and those causes of action must be dismissed.

> ***a.    Plaintiff's Change of Legal Position Theory is Not Supported.***

The sole factual allegation (as opposed to legal conclusions and unsupported inferences) regarding the "exchange" between the parties are at Paragraphs 9, 11 and 12 of the Complaint:

> 9.    During Patient's admission, Stanford Hospital contacted Multinational and/or Multinational's agent to verify Patient's health coverage. For the first [sic] admission, Multinational and/or Multinational's agent confirmed Patient was an enrollee of a health plan sponsored and/or underwritten by Multinational. Multinational and/or Multinational's agent confirmed that authorization of services provided was not required and that Stanford Hospital should submit its claim.
> . . .
> 11.   On or about July 12, 2005, Stanford Hospital submitted the

-7-

**REPLY SUPP. DEF'S.
MOTION TO DISMISS**                                                                                     **CASE NO. C 07-05497 JF**

> final bill regarding Patient's admission to Multinational for payment . . . .
> 12. After receiving the bill, Multinational stated that it would not pay the total amount of the bills as it did not cover services rendered in the United States or Canada under its policy with Patient. Stanford Hospital attempted to resolve the matter with Multinational, but the parties could not resolve this matter.

(Complaint, ¶¶ 9, 11-12).

There is no allegation that MNU sought anything from Plaintiff. Nor is there any allegation that Plaintiff gave anything at all in exchange for that alleged promise. All the complaint says as regards consideration is: "and thus Stanford Hospital was induced not to make other financial arrangements to obtain payment for the medical services, equipment, and supplies eventually rendered to Patient." (Complaint, ¶ 14.) There is no allegation that this "inducement" was part of any agreement between the parties.

The sum total of the allegations are that Plaintiff contacted MNU to obtain authorization for services (largely already performed), and that MNU instructed Plaintiff it would have to submit a claim. There was no performance or return promise sought by the alleged promisor (MNU) in exchange for its promise, nor was there any performance or return promise given by the promisee (Plaintiff) in exchange for that alleged promise. Nor did the promise itself occur. Plaintiff offered nothing to MNU, MNU requested nothing from Plaintiff, a contract was not made, and plaintiff's complaint must fail.

      **b.**    *Plaintiff's Attempt to Allege Fulfillment of MNU's Duty to Patient is Likewise Not Supported.*

Apparently realizing it is putting the cart before the horse, Plaintiff attempts to argue consideration by suggesting for the first time in its opposition that it "helped defendant fulfill its duty to patient under the terms of Patient's" inapplicable, international travel plan. (Opp., at 6.)

But the Complaint does not allege that MNU had any duty to Patient at all. Nor did MNU have any such duty, as it denied Plaintiff's claim on July 28, 2005, because the international travel policy did not cover services rendered in the United States or Canada. (Complaint, ¶ 12; Decl. Counsel, Exh. A; Decl. Padgett, ¶¶ 3, 4, Exhs. A, B.) MNU had no duty to patient, nor does the

-8-

complaint allege any such duty, and Plaintiff's belated suggestion that such a duty existed is without support or merit.

Further, Plaintiff has gone out of its way to assert its claims against MNU are based not on the travel policy, but solely on its allegation of an independent contractual obligation on MNU's part to pay for the treatment of Patient, based on a single telephone conversation where Plaintiff did nothing more than request verification of coverage and authorization for services, and where MNU allegedly "confirmed Patient was an enrollee of a health plan sponsored and/or underwritten by Multinational . . . [and] confirmed that authorization of services provided was not required and that Stanford Hospital should submit its claim." (Complaint, ¶ 9.)

Now that MNU has shown this brief exchange in no way makes a contract (*see Quackenbush*, 34 Cal.App.4th at 1288), Plaintiff is belatedly referring to the insurance policy it had already alleged was inapplicable and specifically explained it was not relying upon.

Plaintiff's last ditch efforts cannot save its complaint, and the claims for breach of oral contract and for common counts must be dismissed for lack of a valid contract.

C. **PLAINTIFF FAILED TO PLEAD THE NEGLIGENT MISREPRESENTATION CAUSE OF ACTION WITH PARTICULARITY, OR TO PLEAD A POSITIVE ASSERTION THAT WAS INTENDED TO MISLEAD**

In opposition to the observation that Plaintiff failed to properly plead a cause of action for negligent misrepresentation, Plaintiff contends that its factual allegations in paragraph 9 of the complaint, pared with its conclusory statements and legal conclusions about those allegations in paragraphs 14 and 24 – what Plaintiff deems " **tacit approval** of Stanford Hospital's treatment of Patient" (Complaint, ¶ 31) – created not just an obligation and contract between the parties, but also amounts to negligent misrepresentation. Plaintiff then refers yet again to *Cedars-Sinai*, this time for the proposition that "allegations that a health insurer provided verification of insurance coverage and authorization to perform medical services . . . are sufficient to support a cause of action for breach of contract." (Opp., at 7.) Plaintiff fails utterly to respond to the requirement that a claim for negligent misrepresentation allege intent to actually induce reliance on the misrepresented fact. *See B.L.M. v. Sabo & Deitsch*, 55 Cal.App.4th 823, 834 (1997)

As noted above, the facts in *Cedars-Sinai* and the issues before the court are vastly different than the issues here. There is no allegation of authorization here. There is no allegation of a pre-existing agreement between the parties. There is only Plaintiff's attempt to "snap up" a single, brief telephone inquiry where Plaintiff was instructed to submit a claim as somehow sufficient not just to create a contract between the parties, but as also constituting negligent misrepresentation. A valid claim for negligent misrepresentation requires something more.

### 1. Plaintiff Fails to Meet Heightened Pleading Requirements

> Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.

*B.L.M.*, 55 Cal.App.4th at 834; see Cal.Civ.Code § 1572(2).

A claim for negligent misrepresentation must meet the heightened pleading requirements of FRCP 9(b). A plaintiff must allege with particularity the time, place and contents of the misrepresentation so that the defendant can identify the statement. *Miller v. Allstate Ins. Co.*, 489 F.Supp.2d 1133, 1139 (SD Cal. 2007).

Plaintiff alleges a general time, because to state the specific date would show that the medical treatment provided to patient occurred largely before Plaintiff contacted MNU. Plaintiff also fails entirely to allege when the claim was denied, because to do so would show it had failed to satisfy the statute of limitations on breach of an oral contract. Plaintiff does not identify who at MNU purportedly made the statements alleged, nor does it allege other then generally that MNU stated Patient had some form of insurance through MNU, that authorization of services was unavailable, and that Plaintiff would need to submit a claim. Plaintiff does not allege to whom at Stanford Hospital the allegedly negligent misrepresentation was made. Plaintiff does not allege ignorance of the truth or justifiable reliance. Nor does plaintiff even really allege damages, as Plaintiff maintains it still has an independent right to pursue Plaintiff for the amounts claimed due and owing. (Opp., at 4:24-27.) Plaintiff has failed to allege negligent misrepresentation with the requisite particularity, and the claim is properly dismissed.

**2.  Plaintiff Fails to Plead a Positive Assertion.**

The doctrine of negligent misrepresentation **does not** impose liability for negligent omissions or implied representations; rather, **a 'positive assertion' is required**. *Huber, Hunt & Nichols, Inc. v. Moore,* 67 Cal.App.3d 278, 304 (1977).

Plaintiff does not allege with specificity any positive assertion, but instead relies on suggested implications and legal conclusions that the statements attributed to MNU in Paragraph 9 of the Complaint somehow imply a positive agreement to pay:

> 24.  An employee and/or agent of Multinational informed Stanford Hospital that Patient was an individual enrollee of Multinational, and **thereby** represented to Stanford Hospital that Multinational would pay Stanford Hospital's usual and customary total billed charges associated with rendering medical services, equipment, and supplies rendered to Patient.
>
> . . .
>
> 31.  Multinational's verification of coverage and **tacit approval** of Stanford Hospital's treatment of Patient created an obligation and contract between the parties . .

(Complaint, ¶¶ 24, 31 (emphasis added).)

All plaintiff has alleged is that MNU's confirmation that Patient had some form of insurance through MNU and instruction to Plaintiff to submit a claim constitutes an implied representation that MNU would pay whatever unspoken amounts Plaintiff decided it should pay. This does not meet the minimum pleading requirements of a cause of action for negligent misrepresentation (*Huber,* 67 Cal.App.3d at 304), and the cause of action must be dismissed.

**D.  PLAINTIFF FAILED TO PROPERLY PLEAD COMMON COUNTS**

In response to MNU's observation that Plaintiff failed to properly plead common counts, Plaintiff confirms that its common counts cause of action is an alternative form of relief to its breach of oral contract cause of action, and thereby fails if that cause of action fails. (Opp., at 8.)

Because, as explained above and in the moving papers, the Breach of Oral Contract cause of action fails to allege the essential elements of that cause, fails to satisfy the statute of frauds, and fails to survive the statute of limitations, the Common Counts cause of action also fails and must be dismissed.

1  **E.   FAILURE TO ESCAPE THE STATUTE OF LIMITATIONS**

2  The statute of limitations on a claim of breach of oral contract and on a related common
3  counts cause of action is two years. Cal. C.C.P. § 339; *Filmservice Laboratories, Inc. v. Harvey*
4  *Bernhard Enterprises, Inc.* 208 Cal.App.3d 1297, 1308 (1989).

5  Plaintiff admits that its common counts claim was pled as an alternative to its breach of oral
6  contract claim (Opp., at 8:3-5), but contends that the Court cannot consider "evidence" outside the
7  four corners of the complaint, and thus, because the complaint does not state the date on which MNU
8  first informed it of the claim denial, the Court is required to turn a blind eye to any declarations or
9  evidence to the contrary, and accept as true the statements of the complaint. (Opp., at 2:27 - 3:4.)
10 Plaintiff offers no declarations or evidence to support its contention that it was not informed of the
11 claim denial until after August 4, 2005, nor does the complaint allege any specific (or even general)
12 dates as to when the alleged breach occurred. It is simply unsupported advocacy.

13 As an initial matter, where only one side of the conflict was supported by declaration, the
14 Court does not assume the truth of allegations in a pleading which are contradicted by declaration.
15 *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

16 The medical services at issue were provided between July 4, 2005 and July 6, 2005.
17 (Complaint, ¶ 8.) MNU's statements at issue purportedly occurred during this three day period.
18 (Complaint, ¶ 9.) Plaintiff submitted its claim on July 12, 2005. (Complaint, ¶ 11.) The claim was
19 denied on July 28, 2005. (Complaint, ¶ 12; Decl. Counsel, ¶ 3, Exh. A, Decl. Padgett, ¶¶ 2, 3, 4,
20 Exhs. A, B.) The Complaint was filed on August 3, 2007, over two years after the claim denial.

21 Plaintiff's first and third claims for relief, for "breach of oral contract" and "common counts,"
22 fail to state claims because those actions are time-barred. *Jablon v. Dean Witter & Co.*, 614 F.2d
23 677, 682 (9th Cir. 1980); *ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859 (3d. Cir. 1994).

24  **1.   Plaintiff failed to plead around the statute of limitations**

25 Where the facts and dates alleged in the complaint indicate the claim is barred by the statute
26 of limitations, a motion to dismiss for failure to state a claim lies. The complaint fails to state a claim
27 / / /
28 / / /

-12-

**REPLY SUPP. DEF'S.**
**MOTION TO DISMISS**                                                            **CASE NO. C 07-05497 JF**

1  because the action is time-barred. *Jablon*, 614 F.2d at 682; *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (plaintiff may be obligated to plead around or avoid a statute of limitations defense).

4  Plaintiff alleges that both the oral contract and Plaintiff's demand for payment were made in July 2005. The complaint was filed in August 2007. In order to avoid dismissal, plaintiff is required to plead around the defense and specify the date on which it first "learned" that defendant MNU would not acquiesce to its unsupported demand for payment. That is the level of specificity that is required.

**2. Extrinsic Evidence relating to a Statute of Limitations Defense May Be Considered.**

Plaintiff claims the Court must close its eyes to the statute of limitations defense because, though it alleges MNU denied its claim (and thereby breached the alleged implied contract) it is not expressly disclosed on the face of the complaint the date of that alleged breach. The law does not require such a result.

Plaintiff is not required to attach to the complaint the documents on which it is based, but if it fails to do so, the defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint *to show that they do not support* plaintiff's claim. Schwarzer et. al., *Cal. Pract. Guide: Fed. Civ. Proc. Before Trial*, ¶ 9:212.1 (Rutter 2007) (*citing Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)(overruled on other grounds in *Galbraith v. County of Santa Clara* 307 F.3d 1119, 1127 (9th Cir. 2002)); *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1281, fn. 16 (11th Cir. 1999)). "This prevents 'a plaintiff with a legally deficient claim (from surviving) a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Id.*, at ¶ 9:212.1a (*quoting Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993)).

This "incorporation by reference" doctrine allows the court to look beyond the pleadings without converting the 12(b)(6) motion into a motion for summary judgment. *Id.,* at ¶ 9:212.1b (*citing Knievel v. ESPN*, 393 F.3d 1068, 1076–1077 (9th Cir. 2005).

Additionally, the Ninth Circuit has extended the "incorporation by reference" rule to documents attached to defendant's Rule 12(b)(6) motion, the authenticity of which is not contested

-13-

1  and upon which plaintiff's complaint necessarily relies ... even though they were *not* mentioned in
2  the complaint. This prevents plaintiffs from "deliberately omitting references to documents upon
3  which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Global
4  Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156–157 (2d Cir. 2006)
5  ("prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever
6  drafting"), *Fed. Civ. Proc. Before Trial*, at ¶ 9:212.2 (quoting same).

7  Plaintiff alleges a breach of oral contract in the form of a claims denial, but deliberately fails
8  to allege when that breach occurred. (Complaint, ¶ 12.) Nevertheless, the complaint necessarily
9  relies on the claims denial as an integral element of all of its causes of action, and the date that denial
10 was first expressed to Plaintiff is incorporated by reference into the complaint. The Court may thus
11 consider documents which show that denial was first expressed in July 2005, for the purpose of
12 considering whether Plaintiff has failed to plead around the statute of limitations. MNU submitted
13 a document that was part of the claim file with its Motion to Dismiss which stated that the denial
14 occurred on July 28, 2005. Plaintiff dislikes the declaration of counsel, so MNU now submits a
15 declaration from MNU's claims manager to further verify the authenticity of the September 20, 2005
16 letter and the July 28, 2005 claim denial and explanation of benefits date stated therein. (Decl.
17 Padgett, ¶¶ 2-4.)[1]

18 In opposing the motion to dismiss, Plaintiff could have provided a declaration as to when it
19 first learned of the claim denial. It chose not to. As a result, the truth of the allegations in the
20 complaint need not be presumed where they contradict with defendant's declaration. *Data Disc,*,
21 557 F.2d at 1284. Plaintiff has failed to plead around the statute of limitations, and its causes of
22 action for Breach of Oral Contract and Common Counts must be dismissed.

23 / / /
24 / / /
25 / / /

---

27 [1] Because Plaintiff attempts to argue consideration by suggesting for the first time in its opposition that it "helped defendant fulfill its duty to patient under the terms of Patient's"
28 inapplicable, international travel plan, (Opp., at 6), the Declaration of Jon Padgett confirms the travel plan is inapplicable and that this information was transmitted to Plaintiff. (Decl. Padgett, ¶¶ 2-4.)

-14-

REPLY SUPP. DEF'S.
MOTION TO DISMISS                                                      CASE NO. C 07-05497 JF

### III. CONCLUSION

For the foregoing reasons, defendant MNU respectfully requests that the Complaint be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. Additionally, because amendment would be futile, MNU requests that the dismissal be with prejudice.

Respectfully submitted,

RIMAC & MARTIN, P.C.

DATED: January 4, 2008        By:    /s/ **JOSEPH M. RIMAC**
                                     JOSEPH M. RIMAC
                                     Attorneys for Defendant
                                     MULTINATIONAL UNDERWRITERS, LLC

-15-

**REPLY SUPP. DEF'S.
MOTION TO DISMISS**                                            **CASE NO. C 07-05497 JF**