**E-filed 12/12/08**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| STANFORD HOSPITAL AND CLINICS, | Case Number C-07-05497 JF (RS) |
| Plaintiff, | ORDER[1] GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | [re:  doc. no. 28] |
| MULTINATIONAL UNDERWRITERS, INC., and DOES 1 THROUGH 25, INCLUSIVE | |
| Defendants. | |

      Defendant Multinational Underwriters, LLC ("Multinational") moves for summary judgment as to the claims of Plaintiff Stanford Hospital and Clinics ("Stanford") for breach of oral contract and common counts.  The Court has considered the moving and responding papers and the oral arguments presented at the hearing on December 5, 2008.  For the reasons set forth below, the motion will be granted .

## I. BACKGROUND

      Stanford admitted a patient to its facility on July 4, 2005.  Initially, the patient was unable to provide any proof of insurance.  On July 5, 2005, the patient informed Stanford that he had a

---

[1] This disposition is not designated for publication in the official reports.

1   policy with Multinational.  In accordance with Stanford's standard procedures in such situations,

2   a Stanford employee then telephoned Multinational to verify the patient's benefits and eligibility.

3   Relevant excerpts of this initial conversation are set forth below:

4       Multinational:  Thank you.  And the I.D. or certificate number of the
        patient?
5
        Stanford:  2590544.
6
        Multinational:  Thank you.  It will be just a moment.  And the patient
        name?
7
        Stanford:  [a patient's name is given]
8
        Multinational:  Thank you.  I am showing his effective date is 4/29/05 and
        the termination date is 4/29/06.  I'm showing he has a $500 deductible and
9       none of that has been met yet.  Now, in the network, which is the First
        Health Network…
10
        Stanford:  First Health…hold on…okay.
11
        Multinational:  Okay, in the First Health Network, we can pay up to 100%
        of eligible expenses after the deductible.  Outside of the network we do pay
12      80% of the first $5,000 in claim.

13      Stanford: Out of network, what is it, the first $5,000?

14      Multinational: We pay 80% of the first $5,000, after deductible.

        Stanford: …of $5,000…after deductible.
15
        Multinational:  Yes.
16
        Stanford:  Okay, so if it's in-network, $500, zero percent net, at 100
17      percent. Or…

18      Multinational: Right, depending on your contract, yeah.

        Stanford:  Okay, is there a lifetime maximum?
19
        Multinational:  It is a $5 Million policy.
20
        Stanford:  And is there a group number?
21
        Multinational:  Yes, it is. Let me grab that for you.  The group number is
        9819202.
22
        Stanford:  And who do we send the claim to?
23
        Multinational:  It goes to MNUI Claims Department.
24
        Stanford:  M - N – like Nancy? - U - I.

25      Multinational:  Uh huh. Claims Department.  And that's P.O. Box 863,
        Indianapolis, Indiana 46206
26
        Stanford:  And the group name, what would that fall under?
27
        Multinational:  It is actually International Citizens.
28
        Stanford:  And is it like a HMO, PPO…

        Multinational:  This is a PPO plan.

        Stanford:  Is pre-certification required?

2

Multinational:  Pre-notification is required for MRIs, CT scans, major diagnostic procedures like that, as well as any sort of in or out patient surgery or any in-patient treatment.

Stanford:  So, I should have a case manager call you before the treatments…

Multinational:  Only if he's having an MRI or a CT scan or some sort of surgery.

Stanford:  I don't know what he's having, but you need to be notified prior to the service?

Multinational:  Correct.

Stanford:  And who would they call then?

Multinational:  It's the same number.  Anybody here would be more than happy to help you with that.

Stanford:  Okay, alright, so yes, it's required.  MRI, CT, or surgery.

Multinational: Yes.

Stanford:  Anything else under that?

Multinational:  No, not right off, no.

Padgett Decl. Ex. B at 1-3.

Several hours later, a second Stanford employee contacted Multinational to seek pre-certification for a cardiac catheterization procedure.  The relevant portions of that conversation are as follows:

Stanford: [T]his is [Stanford employee name].  I'm a case manager at Stanford.  And we have a patient here, I guess has your insurance, who needs to get pre-certified for a Cath – Catheterization.

…

Multinational:  And they're, um, doing a catheter?

Stanford:  He needs a cardiac catheterization, possible stenting.

Multinational:  What we have here is called pre-notification. Prenotification is just letting us know what's being done, for better service.  Pre-notification prevents the claim being paid at a 50% penalty. It doesn't guarantee payment.  The claims department must review the claims first.

Stanford:  Uh, after it's done?

Multinational:  Right.

Stanford:  And you know, what the stenting is, if there should be tear or anything like that, there's always O.R. standby, operating room standby, just so that you guys know that as well.

Multinational:  Okay. Is this going to be like a . . . is it in-patient or out-patient type . . .

Stanford:  He's in-patient right now. He's going for a cardiac cath for diagnosis, possible stenting, possible O.R. if there are any complications.

3

1    Multinational:  And when did he go in-patient?

2    Stanford:  It looks like he was transferred to us from Community Hospital
     in Monterey on July 4th.

3    Multinational:  Okay, so I have in-patient on July 7th, for cardio catheter,
     possible stenting, possible O.R.  And this is at Stanford Hospital?

4    Stanford:  Correct.

5    Multinational:  Okay , I'm writing, entering this into the system.  We don't
     have, like, a pre-notification number or anything, but we use our names for

6    a reference. My name is [employee name].  And the initial of my last name
     is "M."

7    Stanford:  [Multinational employee name] notified.  Okay, thank you so
     much.  Bye.

8    Multinational:  You're welcome.  Bye bye.

9
     Padgett Decl. Ex. B at 4-5.

10
          Both before and after these telephone conversations with Multinational's representatives,

11
     Stanford provided medical services, equipment, and supplies to treat the patient.  The patient was

12
     discharged from Stanford on July 6, 2008.  On July 14, 2005, Stanford submitted a claim for

13
     $76,590.49 to Multinational.  On July 26, 2005, Multinational denied the claim in its entirety on

14
     the ground that the patient's insurance policy did not include coverage for treatment received

15
     within the United States or Canada.  Stanford pursued the claim, believing that it was owed

16
     payment because of the representations made by Multinational during the telephone calls as well

17
     as a pre-existing contractual relationship between the parties through the First Health Network.[2]

18
     Multinational continued to deny the claim, informing Stanford that it was not a member of the

19
     First Health Network and that the patient's policy was an "International Citizens" policy, which

20
     meant that only treatments provided outside the patient's country of citizenship were covered.

21
     Multinational maintains that it did not know that the patient in question was a U.S. citizen at the

22
     time of the telephone conversations with Stanford.

23
          The parties were unable to resolve the dispute over the submitted claim, and Stanford

24

25   _____

26      [2] The First Health Network, of which Stanford is a member, is a network of medical
     providers and insurers.  Services are provided at a discount to patients who are insured within the

27   First Health Network.  Stanford has presented evidence that it is a member of the First Health
     Network but has submitted no evidence in response to the declaration by Multinational that

28   asserts that Multinational never has had a contract with the First Health Network.

                                                    4

1  subsequently filed a complaint against Multinational in Santa Clara Superior Court.  The

2  complaint alleged three claims for relief: (1) breach of oral contract, (2) negligent

3  misrepresentation, and (3) common counts.  Multinational then removed the action to this Court

4  and filed a motion dismiss the complaint.  On January 23, 2008, the Court granted

5  Multinational's motion to dismiss in part, dismissing Stanford's claim for negligent

6  misrepresentation with leave to amend.  Stanford did not file an amended complaint.

7      In the instant motion, Multinational argues that Stanford's remaining claim for breach of

8  oral contract cannot survive summary judgment because (1) it is barred by the statute of frauds

9  and (2) even if the statute of frauds does not apply, the telephone conversations between the

10  parties on July 5, 2005 did not create a valid contract because there was no mutual consent or

11  consideration.  In rebuttal, Stanford contends that material questions of fact exist as to whether

12  there was mutual consent and sufficient consideration.

### II. LEGAL STANDARD

14      Summary judgment should be granted only when there are no genuine issues of material

15  fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©;

16  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

17  burden of informing the court of the basis for the motion and identifying the portions of the

18  pleadings, depositions, or other evidence that demonstrate the absence of a triable issue of

19  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this

20  initial burden, the burden shifts to the non-moving party to present specific facts showing that

21  there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  Once the

22  moving party meets this burden, the nonmoving party may not rest upon mere allegations or

23  denials, and instead must present evidence sufficient to demonstrate that there is a genuine issue

24  for trial.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

### III. DISCUSSION

26      As in its previous motion to dismiss, Multinational argues that Stanford's claim for

27  breach of oral contract is barred by the statute of frauds because a promise to pay for the debt of

28  another must be in writing.  *See Swim v. Juhl*, 72 Cal. App. 363, 364-66 (1925).  Essentially,

5

1   Multinational's position is that because the patient was primarily responsible for the debt

2   incurred by Stanford, any promise by Multinational to pay would have to be memorialized in

3   writing. *See* Cal. Civ. Code § 1624 ("A special promise to answer for the debt, default, or

4   miscarriage of another, except in the cases provided for in Section 2794" must be in writing).  In

5   addition, Multinational argues that the only writing proffered by Stanford, a written agreement

6   dating from 1988 between Stanford and a predecessor to the First Health Network, does not

7   impose any obligation upon Multinational for the patient in question here because Multinational

8   has no formal relationship with the First Health Network.

9          If Multinational were correct regarding the applicability of the statute of frauds,

10  Stanford's breach of oral contract claim would not have survived the previous motion to dismiss.

11  However, as the Court observed when it denied Multinational's prior motion, Stanford is

12  claiming that Multinational breached an independent promise to pay Stanford directly.  Such an

13  agreement is not governed by the statute of frauds.  *See* Holmes' Appleman on Insurance § 17.5,

14  at 24 (1998) ("surety and guaranty insurance is not affected by the Statute of Frauds [which]

15  requir[es] that a promise to answer for the debt, default, or miscarriage of another person [must

16  be in writing]…oral guaranty/surety agreements are not contacts to perform the original debtor's

17  obligation but rather are contracts to indemnify the creditor against loss or damage from the

18  debtor's nonperformance").  *See also Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of*

19  *U.S.*, 497 F.3d 972, 981 (9th Cir. 2007) ("Cedars-Sinai's claims arise from PBP Health's

20  contractual obligation to Cedars-Sinai – an obligation that arose when PBP Health represented

21  that S.M. was covered by the Plan").[3]

22         Accordingly, the remaining issue is whether sufficient evidence exists that would allow a

23  trier of fact[4] to find that Stanford and Multinational entered into a binding oral contract.  In

24

25         [3] Moreover, Cal. Civ. Code § 1624 does not apply to surety agreements.  *See* Cal. Civ.

26  Code § 2794(2) (statute of frauds does not apply "[w]here the creditor parts with value, or enters
    into an obligation, in consideration of the obligation in respect to which the promise is made, in

27  terms or under circumstances such as to render the party making the promise the principal debtor
    and the person in whose behalf it is made, his surety").

28
           [4] The parties have waived their right to a jury trial.

1  California, a valid contract requires (1) parties capable of contracting, (2) mutual consent, (3) a

2  lawful object, and (4) consideration.  Cal. Civ. Code § 1550.  Multinational argues that any

3  alleged agreement between Stanford and Multinational fails to meet at least two of these four

4  requirements, namely adequate consideration and mutual consent.

5                                       A.  Consideration

6          Under California law, "[a]ny benefit conferred . . . upon the promissory, by any person, to

7  which the promissory is not lawfully entitled, or any prejudice suffered . . . by such person . . . as

8  an inducement to the promissory, is good consideration for a promise."  Cal. Civ. Code § 1605.

9  *See also* Williston on Contracts § 7:4 (4th ed. 2008) ("Neither the benefit to the promisor nor the

10  detriment to the promisee need be actual; rather, it is a sufficient legal detriment to the promisee

11  if it promises or performs any act, regardless of how slight or inconvenient, which it is not

12  obligated to promise or perform so long as it does so at the request of the promisor and in

13  exchange for the promise.").

14          Multinational argues that it never asked Stanford to treat the patient and that there is no

15  evidence of any benefit conferred upon Multinational as part of any alleged agreement to provide

16  medical treatment.  Stanford replies that Multinational received consideration for its alleged

17  promise to pay because Stanford agreed to treat the patient only after Multinational indicated that

18  it would reimburse the costs of such treatment.  While it may be that Stanford would have treated

19  the patient regardless of Multinational's statements, or that a trier of fact would conclude that

20  Multinational did not request that Stanford actually treat the patient, for purposes of summary

21  judgment there is sufficient evidence to create a triable issue as to adequate consideration.

22                                       B.  Consent

23          California law requires that parties communicate their mutual consent in order to enter

24  into a contract.  *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996).  Consent is

25  not mutual unless the parties agree upon the same thing in the same sense.  *Khajavi v. Feather*

26  *River Anesthesia Med. Group*, 84 Cal. App. 4th 32, 60 (2000).  Multinational contends that the

27  transcripts of the telephone conversations demonstrate Multinational's lack of consent.  In

28  particular, Multinational points to the following statement made during the second telephone

7

conversation:

> What we have here is called pre-notification. Prenotification is just letting us know what's being done, for better service. Pre-notification prevents the claim being paid at a 50% penalty. It doesn't guarantee payment. The claims department must review the claims first.

Multinational also has presented evidence that its telephone representatives are not authorized to provide claim approvals. Instead, claims are approved after review by an internal claims evaluation committee. The committee rejected the claim after it was discovered that the patient was a U.S. citizen and thus not covered by the applicable International Citizens policy.

Multinational argues that there is no triable issue of fact with respect to consent because it is undisputed that (1) it never authorized any treatment but only acknowledged pre-certification of treatment; (2) it made an express disclaimer, stating that payment was not guaranteed; and (3) even if its representative made statements that could be construed as a promise to pay, such a promise contravened Multinational's internal policies and could not bind Multinational.

In response, Stanford has submitted the declaration of Shoshana Williams, Director of Patient Financial Services at Stanford. Ms. Williams' declaration includes the following statement regarding Stanford's standard practices with respect to insurance verification:

> 3. The primary method of obtaining coverage information regarding a patient is to call a patient's designated insurer/health plan. When calling a designated insurer/health plan, the claims representative will try and obtain the terms of the patient's coverage and an authorization to proceed with medical services.

> 4. When an insurer confirms that it cover's [sic] a patient's medical treatment, it is Stanford Hospital's understanding that such a representation means it will pay for those services unless there is a specific disclaimer or restriction mentioned at that point, such as a pre-existing condition exclusion. Once treatment begins, Stanford Hospital expects payment from that entity.

> 5. When an insurer requires pre-certification (as sometimes evidenced on an enrollee's insurance care [sic] presented to a hospital's admission desk), with regard to a specific treatment which the insurer then gives, Stanford Hospital believes the insurer has approved that service for coverage and will then pay for such treatment.

Williams Decl. at 2-3. Based upon this declaration, Stanford argues that Multinational's verification of coverage amounted to a promise to pay for the patient's treatment.

The relevant case law weighs against a finding that verification alone constitutes consent,

1    especially when a disclaimer is provided.  In *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins.*

2    *Co.*, 118 F. Supp. 2d 1002 (C.D. Cal. 2000), hospital intake staff contacted Mid-West by

3    telephone to verify insurance coverage.  *Id*. at 1006.  As in the instant case, the Mid-West

4    representative verified that the policy was in effect and recited the various deduction amounts for

5    in-network and out-of-network care.  *Id*.  Mid-West's standard practice was to provide a

6    disclaimer similar to Multinational's, in that verification alone did not guarantee payment of

7    claims.  *Id*. at 2007.  However, the parties disputed whether Mid-West actually recited its

8    standard disclaimer to hospital staff, either over the phone or in writing.  *Id.* at 1006-07.  The

9    court concluded that notwithstanding the factual dispute regarding the disclaimer, the hospital's

10   claim for breach of oral contract could not survive summary judgment because there was no

11   evidence presented by the hospital that verification alone could be viewed as a manifestation of

12   intent to enter into a contract.  *See id*. at 1008 ("Cedar's own expert witness opines that, within

13   the medical insurance industry, an insurer's verification is not the same as a promise to pay.").

14        A similar result was reached in *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc*.,

15   520 F. Supp. 2d 1184 (C.D. Cal. 2007), in which the insurer eventually denied a claim due to a

16   preexisting condition.  In that case, the hospital called the insurance provider, Fortis, to verify

17   coverage of a patient admitted to the emergency room.  *Id*. at 1190.  As is the case here, the

18   Fortis representative fielding the call lacked any authority to bind Fortis to pay for expenses

19   incurred by the patient.  *Id*. at 1191.  The Fortis representative verified coverage but provided a

20   disclaimer, stating that Fortis would not pay for treatment related to any pre-existing condition.

21   *Id*. at 1190.  In support of its motion for summary judgment, Fortis provided expert testimony

22   regarding the understanding within the medical industry as to the significance of coverage

23   verification as opposed to authorization of treatment.  In a non-emergency situation, a formal pre-

24   authorization process occurs, in which the insurance provider verifies eligibility and may provide

25   authorization if appropriate.  *Id*. at 1192-93.  In contrast, when a patient is admitted during an

26   acute emergency situation, insurers only will provide verification of coverage, as there is no time

27   for formal authorization of various treatments (and some treatment often will have occurred prior

28   to the provider contacting the insurer).  *See id.*  The court found that there was no triable issue as

9

1   to whether Fortis had agreed to guarantee payment for services provided and summary judgment

2   was granted in favor of the insurer. *Id*. at 1194.

3       Both *Tenet* and *Mid-West* highlight the significance of evidence regarding the medical

4   industry's understanding regarding the import of a mere verification of benefits. *See also*

5   *Regents of Univ. of Cal. v. Principal Fin. Group*, 412 F. Supp. 2d 1037, 1044 (N.D. Cal. 2006)

6   (noting importance of "testimony as to the practice and custom in the health care industry, which

7   might assist the court in determining how plaintiff should reasonably have interpreted

8   defendants' conduct.").  Here, no expert testimony was provided by either party that would

9   provide a relatively objective viewpoint with respect to standard industry practices.  The parties

10  have submitted declarations from individuals within their respective claims departments.  These

11  declarations conflict with respect to the significance that should be attributed to Multinational's

12  statements, and Stanford argues that such a dispute is material and precludes a ruling at the

13  summary judgment stage.

14      However, the apparent conflict does not prevent the Court from concluding that summary

15  judgment in the present case is appropriate.  The declaration offered by Ms. Williams

16  demonstrates that there was no meeting of the minds regarding the payment of the claim.  At

17  most, Ms. Williams' declaration only offers evidence as to *Stanford's* state of mind in such

18  circumstances.  It is not disputed that Stanford believed that it would be reimbursed, as it went

19  ahead and treated the patient and subsequently submitted claims for reimbursement.  However,

20  nothing in Ms. Williams' declaration is inconsistent with Multinational's understanding

21  regarding the standard protocol for verifying coverage.  For example, Ms. Williams states that

22  Stanford "will try and obtain the terms of a patient's coverage and an authorization to proceed

23  with medical services" and "[w]hen an insurer confirms that it covers a patient's medical

24  treatment," it is Stanford's understanding that payment will be made "unless there is a specific

25  disclaimer or restriction mentioned at that point."  Stanford has failed to identify any evidence

26  that Multinational authorized any specific procedure during the telephone conversations.  Instead,

27  the transcripts of the conversations demonstrate beyond dispute that Multinational made an

28  express disclaimer regarding future payment and there was no guarantee that any claim by

10

1   Stanford actually would be paid.

2       Moreover, even if Multinational did consent to pay for the treatment, such consent clearly

3   was conditioned on Multinational's review of the submitted claim.  Stanford cannot argue that

4   Multinational waived the review condition by allowing Stanford to treat the patient, as waiver of

5   a material condition of a contract is not binding unless additional consideration is provided for

6   that waiver.  *See Principal Fin. Group*, 412 F. Supp. 2d at 1042.  Stanford has failed to present

7   evidence in rebuttal as to why the disclaimer did not provide a condition precedent that relieved

8   Multinational of any obligation to pay, and as Stanford would have the burden of proof at trial,

9   there is no triable issue as to whether Multinational was obligated to pay.  *Id*. at 1043.  Because

10  the parties agree that Stanford's common counts claim rises or falls with its claim for breach of

11  oral contract, summary judgment for Multinational is appropriate as to all of Stanford's claims.[5]

12                              **IV. ORDER**

13      Good cause therefor appearing, IT IS HEREBY ORDERED that Multinational's motion

14  for summary judgment as to the claims by Stanford for breach of oral contract and common

15  counts is GRANTED.  The pretrial and trial dates previously set are hereby vacated.

16

17

    DATED:  December 12, 2008

18

19

20  _____
    JEREMY FOGEL
21  United States District Judge

22

23

24      [5] While the Multinational representatives could have explained Multinational's
    obligations with greater clarity, a claim based on such behavior should have been asserted under
25  a legal theory other than breach of oral contract.  One such theory might be negligent
    misrepresentation, which Stanford alleged originally but failed to re-plead in any amended
26  complaint; another might be estoppel or breach of implied contract.  *See Principal Fin. Group*,
    412 F. Supp. 2d 1037 (under similar facts, summary judgment was granted in favor of insurer for
27  breach of express contract (written or oral) but denied as to estoppel); *Mid-West*, 118 F. Supp. 2d
    1002 (granting summary judgment as to breach of oral contract but denying as to negligent
28  misrepresentation claim).

Case No. C-07-5497 (RS)
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC1)

1   This Order has been served upon the following persons:

2   Barry Sullivan     bsullivan@sacfirmonline.com, agrigorian@sacfirmonline.com

3   Eligio Jose Luevanos     lluevanos@sacfirmonline.com

4   Joseph M. Rimac     jrimac@rimacmartin.com

5   Joy Young Stephenson     jstephenson@sacfirmonline.com

6   Kevin Gregory Gill     kgill@rimacmartin.com, kplishke@rimacmartin.com

7   William Bernard Reilly     w_reilly@rimacmartin.com, arpibalian@rimacmartin.com,
    kplishke@rimacmartin.com

Case No. C-07-5497 (RS)
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC1)